OPINION OF THE COURT
Emily Jane Goodman, J.
Petitioner Marianne O’Grady moves for an order for preaction discovery pursuant to CPLR 3102 (c), directing defendants to preserve and produce for inspection the written and practical work submitted by applicants for a Master Plumber’s *173 license in 1992, 1993 and 1994. Petitioner took various written and practical exams for the plumber’s license in those years and alleges that she was denied a passing grade because she is female. Her attorney’s affirmation alleges that, upon information and belief, of the approximately 1,000 licensed Master Plumbers in the City of New York, only one is female.
Defendants oppose the motion on the grounds that petitioner does not need the discovery to frame the complaint and also on the grounds that certain of the practical specimens have been destroyed and certain of the tests are confidential. The New York City Department of Personnel (the Department) has agreed to preserve all of the specimens of the "practical work” from the 1994 exams, pending the outcome of the anticipated litigation, but requests permission to continue to dispose of the 1992 and 1993 specimens, as is their normal practice.
The assessment of the propriety of prelitigation discovery lies within the broad discretion of the court. (Thomas v New York City Tr. Police Dept., 91 AD2d 898.) Respondents’ interpretation of the scope of preaction discovery pursuant to CPLR 3102 (c) is too narrow. The provision is not limited to disclosure to aid in bringing an action; it includes preaction disclosure "to preserve information”. Thus this case is distinguishable from cases where preaction disclosure was sought to aid in framing a complaint and the information sought was available to the prospective plaintiff. (See, e.g., Hoffman v Batridge, 155 Misc 2d 862 [1992].) Similarly, this is not a case where plaintiff has requested information concerning other employees or applicants "without limit as to time, nature, or geographical location.” (Neuschatz v Society Generate, 176 AD2d 134 [1st Dept 1991] [denying unlimited discovery request in sexual harassment suit].)
Rather, this is a case where plaintiff asks for preservation of testing materials that are directly relevant to proving her discrimination case. The United States Supreme Court has held that plaintiffs in discrimination actions are entitled to take advantage of "liberal civil discovery rules [that] give plaintiffs broad access to employers’ records in an effort to document their claims.” (Wards Cove Packing Co. v Atonio, 490 US 642, 657.) Since title VII cases may be brought in State court (see, Yellow Frgt. Sys. v Donnelly, 494 US 820 [1990]), the rule of the Supreme Court concerning enforcement of Federal civil rights should be followed by State courts when they are called upon to enforce Federal rights. The rationale *174 behind the liberalized discovery standards in title VII actions apply equally to discrimination actions brought under State law. Under both Federal and State law, the plaintiff bears the burden of showing, by direct, statistical or circumstantial evidence, that he or she has suffered harm because of an employer’s decision that was motivated by an impermissible discriminatory factor. The applicable burdens of proof and production set forth under Federal discrimination laws in Texas Dept. of Community Affairs v Burdine (450 US 248) apply to New York courts considering claims under State laws. (Matter of Miller Brewing Co. v State Div. of Human Rights, 66 NY2d 937.) Federal courts, in balancing the relative needs and costs of discovery, give deference to plaintiffs, as they must shoulder the burden of proving that the employer’s explanations are pretextual. Plaintiffs therefore should not be denied the information necessary to establish their claims. (Avillan v Digital Equip. Corp., 1994 WL 198771 [SD NY 1994].)
The New York State Legislature, in enacting New York’s Human Rights Law (Executive Law § 296) has recognized that it is a "state * * * responsibility to * * * assure, [inter alia,] that every individual * * * [be] afforded an equal opportunity to enjoy a full and productive life” (Executive Law § 290 [3]). The Court of Appeals, in interpreting this legislative declaration, has stated that "[t]he equal opportunity for employment is basic to the equal opportunity to enjoy a full and productive life unless the individual fall[s] into that somewhat rare category where he or she is possessed of independent means.” (State Div. of Human Rights v Kilian Mfg. Corp., 35 NY2d 201, 207 [1974].) Section 300 of the Executive Law provides that the statute is to be "construed liberally for the accomplishment of the purposes thereof’, and, accordingly, the Court of Appeals has stated that "it is the duty of courts to make sure that the Human Rights Law works and that the intent of the Legislature is not thwarted by a combination of strict construction of the statute and a battle with semantics”. (City of Schenectady v State Div. of Human Rights, 37 NY2d 421, 428 [1975] [citations omitted].) The Court also has noted that "[discrimination today is rarely so obvious, or its practices so overt that recognition of the fact is instant and conclusive”. (Supra, at 427.)
Thus, the Legislature and the Court of Appeals have clearly established that New York favors broad and effective enforcement of the discrimination laws. The " 'subtle and elusive’ ” *175 methods which often characterize discriminatory practices (see, State Div. of Human Rights v Kilian Mfg. Corp., supra, 35 NY2d, at 209), and the strong State policy in favor of the eradication of discrimination, combined with the burden of proof placed on plaintiff in these actions, requires courts to insure that plaintiffs are afforded broad and thorough discovery.
An additional reason why broad discovery should be afforded to plaintiffs in civil rights and discrimination actions in New York is that the administrative agencies charged with enforcement of these laws are severely overburdened and unable to pursue timely and exhaustive discovery that is often necessary in these cases. (See, e.g., Matter of Wolff, NYLJ, Jan. 10, 1995, at 26, col 5 [six-year delay at City Human Rights Commission].) Thus, it is in the interests of clearly expressed State policy, judicial economy and speedy enforcement of the civil rights of citizens of this State to afford prompt and broad discovery in civil rights and discrimination actions.
The rationale behind broad postcommencement discovery is as compelling when preaction disclosure is sought. Thus, it is particularly appropriate in a civil rights case such as this one for the court to exercise its discretion to grant preaction disclosure to preserve information that is necessary for the protection of the petitioner’s rights. (See, Thomas v New York City Tr. Police Dept., 91 AD2d 898, supra; Matter of Sarlo v Sarlo, 52 Misc 2d 547 [1966].) Here, the complaint apparently will allege that the practical specimens of plumbing work produced by petitioner for the exam were of comparable quality to those produced by the male applicants. Obviously, the pieces will be important evidence at trial. Respondent essentially concedes the relevance of the specimens by agreeing to maintain the specimens from the 1994 exams. Respondent claims, however, that some of the specimens from 1992 and 1993 have already been destroyed and that therefore the remaining specimens from those years have no evidentiary value. The court agrees with petitioner that she is entitled to examine those specimens and form her own conclusions and make her own arguments regarding the evidentiary value of the remaining specimens or the specimens that have been damaged.
Respondent claims that "the integrity” of the written exams will be compromised if the Department is required to divulge the test questions. Of course, it is the "integrity” of the exams that may be at issue in petitioner’s lawsuit. However, concern *176 ing the written exams, this court will limit plaintiff’s relief at this time to ordering respondents to preserve all test results pending commencement of the lawsuit and will not order disclosure of the written exams pending an agreement by the parties to a confidentiality agreement which maintains the confidentiality of the written test.
Accordingly, it is hereby ordered that petitioner’s motion for an order of preaction discovery is granted to the extent of ordering respondents to preserve all practical and written work from the Master Plumber’s exams of 1992, 1993 and 1994 and to produce for inspection by petitioner all existing practical specimens from those exams.